<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SIDDHARTHA MAITY, | |
| *Plaintiff*, | Civil No.: 19-cv-19861 (KSH) (CLW) |
| v. | |
| TATA CONSULTANCY SERVICES, LTD., | <u>**OPINION**</u> |
| *Defendant*. | |

<u>**Katharine S. Hayden, U.S.D.J.**</u>

**I.      Introduction**

This suit arises from plaintiff Siddhartha Maity's employment with defendant Tata Consultancy Services, Ltd. ("TCS") in the United States pursuant to a deputation agreement. Maity alleges that he was a victim of forced labor trafficking in violation of the Trafficking Victims Protection Act (the "TVPA"), 18 U.S.C. § 1589 *et seq.*, and other federal and state laws.

TCS previously moved to dismiss Maity's complaint and compel arbitration (D.E. 4) under an arbitration clause in his deputation agreement. Having found that in their briefing the parties "c[a]me forward with facts that put the formation of the arbitration agreement in issue," *MZM Construction Co., Inc. v. N.J. Building Laborers Statewide Benefits Funds*, 974 F.3d 386, 406 (3d Cir. 2020), the Court dismissed the motion without prejudice and ordered limited discovery on the circumstances surrounding Maity's execution of the agreement. (D.E. 19, 20.) TCS now renews its motion to dismiss the complaint and compel arbitration (D.E. 29), arguing that the evidence adduced in discovery confirms that Maity executed the deputation agreement knowingly and without coercion. The motion is fully briefed, and the Court decides it without oral argument.

II.     **Factual Background**

A.  **Maity's Employment with TCS**

In or around September 2007 TCS, an international IT company, hired Maity, who was born and educated in India, to work as an IT analyst in Kolkata, India.  (D.E. 1, Compl. ¶¶ 2, 9-10, 29; D.E. 29-9, Seetharaman Decl. ¶¶ 4-5.)  Beginning in December 2011, he came to the United States on an H-1B visa pursuant to the terms of a deputation agreement, which allowed him to work for TCS in the United States.  In the event of his release from the agreement, he had to return to India.  (Seetharaman Decl. ¶ 6; D.E. 29-10, Deputation Agmt. at § 2.)  In or around May 2013, Maity resigned and TCS released him from his deputation allocation.  (Seetharaman Decl. ¶ 7.)

B.  **Circumstances Surrounding Maity's Execution of the Deputation Agreement**

As indicated above, the circumstances of Maity's signing the deputation agreement are central to the pending motion.  By way of background, in opposing TCS's original motion to dismiss his complaint and compel arbitration (D.E. 4), Maity claimed that TCS: (i) informed him that if he did not sign the deputation agreement he would be "left jobless"; (ii) allowed him only 15 minutes "to decide whether or not to take the position *then, if yes,* to review and sign" the agreement; and (iii) expected him to review, understand, and execute a deputation agreement written in English, though he knew "limited English" at the time.  (D.E. 6-1, Maity Decl. ¶¶ 6-8.)  The Court found that these facts placed the formation of the deputation agreement and its arbitration clause at issue, and thus denied the motion without prejudice and ordered limited discovery.  The parties proceeded to conduct the depositions of Maity (D.E. 29-5, Maity Tr.) and TCS employees Subhas Bose (D.E. 30-2, Bose Tr.) and Indranil Sinha (D.E. 30-3, Sinha Tr.), and TCS renewed its motion to dismiss based on the facts uncovered during discovery.  The facts

recited below are based on deposition testimony and supporting documents attached to the parties' briefing on the instant motion.  The Court does not consider the parties' submissions on TCS's original motion.

### i.  Maity's Knowledge of his Deputation

Maity first learned of his potential deputation a "couple of months before [his] actual journey" to the United States, which occurred on November 30, 2011.  (Maity Tr. at 43:24-44:5, 75:2-4.)  He was in contact with TCS's Foreign Deputation Facilitation Unit (the "FDFU") to facilitate the deputation process beginning in the first week of October 2011 (*id.* at 60:3-62:2) and underwent a required medical examination (*id.* at 55:2-14), arranged his travel plans to the United States (*id.* at 51:14-52:16), and completed an employee information form (*id.* at 53:21-54:25) in the weeks that followed.[1]

### ii.  Maity's Execution of the Deputation Agreement

Once Maity confirmed his flight to the United States for November 30, 2011, he was instructed to connect with the FDFU for "further processing."  (*Id.* at 56:16-57:13.)  At approximately 4:00 p.m. on November 29—the day before his flight—Maity met with the FDFU to complete his deputation paperwork, which consisted of a deputation letter, a master agreement, and the deputation agreement.  (*Id.* at 75:2-76:14, 78:9-15.)  Although he knew prior to this meeting that he would need to sign certain paperwork, he "didn't know which paperwork

---

[1] Although Maity declared in connection with the original motion that two of his supervisors—Nilay Bal and Subhas Bose—"made clear to [him] that if [he] did not agree to the transfer, [he] would lose [his] employment with the company in India and be left jobless," (*see* Maity Decl. ¶ 6), both Bal and Bose have submitted declarations in support of TCS's renewed motion indicating that they "never made any such statements," and that if Maity "had refused to execute the Deputation Agreement, he would have simply continued the work he was performing for TCS in India."  (D.E. 29-7, Bal Decl. ¶ 7; D.E. 29-8, Bose Decl. ¶ 8.)  Maity's counsel deposed Bose but did not ask whether he made such a statement.  (*See generally* D.E. 30-2, Bose Tr.)

exactly [he] had to sign," and did not ask for copies of the paperwork in advance.  (*Id.* at 90:8-18.)

The deputation agreement is an 11-page document that outlines the terms and conditions of Maity's deputation to the United States.  (*See generally* Deputation Agmt.)  Beginning on page six of the agreement is a section entitled "Dispute Resolution,"[2] which provides in pertinent part as follows:

> 9.1 Except as set forth in section 9.3, any and all controversies or claims arising out of or relating to the Employee's Deputation, compensation, [and] this Agreement including its validity or its breach shall be submitted to and finally settled by binding arbitration by a single arbitrator or panel of three arbitrators as provided below. The venue for arbitration shall be Mumbai, India. The arbitrator shall be a retired judge of a City Civil Court. . . .
>
> 9.2 The arbitration proceeding shall be governed and conducted in accordance with the Indian Arbitration and Conciliation Act 1996 . . .
>
> 9.3 Notwithstanding anything to the contrary herein, neither Party shall be prevented from seeking injunctive relief against any violation of Section 6 or 7 of this Agreement in a Court of competent jurisdiction or to obtain injunctive relief in accordance with Section 8.  THE PARTIES EXPRESSLY AGREE TO SUBMIT TO PERSONAL JURISDICTION OVER HIM/HER IN THE STATE OF NEW YORK.   ACCORDINGLY, THE EMPLOYEE ACKNOWLEDGES AND UNDERSTANDS THAT HE/SHE WILL BE SUBJECT TO SUIT IN THE STATE OF NEW YORK FOR BREACH BY EMPLOYEE OF SECTION 6 or 7 OF THIS AGREEMENT.

(*See id.* at § 9 (the "arbitration clause").)

Maity signed the documents "within fifteen minutes," and took them to human resources for countersignature.[3]  (Maity Tr. at 67:11-68:10, 78:20-79:8.)  He did not ask the FDFU for

---

[2] Like the other section headings in the deputation agreement, "Dispute Resolution" is bolded.

[3] During his deposition, TCS employee Bose was prompted by Maity's counsel to read the deputation agreement and explain its contents.  He responded that he would "need a couple of hours to read through the document and understand[] that detail to answer or understand a little bit of it."  (Bose Tr. at 35:6-8.)

more time to review the documents before signing, but also was not offered that option.  (*Id.* at 91:12-19.)  The FDFU employee who provided Maity with the deputation paperwork, Indranil Sinha, declared that his "working hours" were typically 9:00 a.m. to 6:30 p.m., but if employees "wanted to take copies of the [deputation paperwork] home to review further before signing, they were permitted to do so."  (D.E. 29-6, Sinha Decl. ¶ 10; Sinha Tr. at 11:1-6.)

When he brought back the documents he signed for countersignature, Maity did not ask human resources any questions about them.  (Maity Tr. at 69:4-9, 91:5-23.)  Nor did he ask to speak to an attorney during his review.  He testified that he would have had an attorney review the deputation agreement had he been given the "opportunity."  (*Id.* at 69:10-13, 81:24-82:9, 91:24-92:3.)

### iii.   Maity's Education, Experience, and Knowledge of the English Language

When Maity was a high school student, he took a mandatory English language course where he learned how to speak, read, and write in English.  (*Id.* at 11:14-12:5.)  According to his 2003 "mark sheet" from the high school, he received a higher score in English than he received in Bengali, his native language.  (*Id.* at 12:23-14:3, 16:17-23.)  After completing high school, he attended university and received an engineering degree.  (*Id.* at 17:11-22.)  All of his university classes were taught, at least in part, in the English language, and his textbooks and his exams were written in English.  *(Id.* at 17:23-18:24.)

Maity graduated from university in 2007 with "good" grades and began working for TCS. (*Id.* at 21:22-22:8, 24:12-19.)  On his TCS employment application, which was written in English, he certified that he could read, write, and speak English.  (*Id.* at 25:10-27:20.)  During

his employment with TCS—including when he was based in Kolkata, India—all of his work was conducted in the English language.[4]  (Bal Decl. ¶ 11; Bose Decl. ¶ 12.)

## III.   Procedural History

On November 5, 2019, Maity filed a complaint asserting that he was a victim of "forced labor" trafficking, as that term is defined in the TVPA, and that TCS failed to pay a lawful minimum wage in violation of the Fair Labor Standards Act, 29 U.S.C. § 216.  The complaint also alleges common law claims of intentional and negligent infliction of emotional distress and breach of contract.  (*See* Compl. ¶¶ 34-44.)

TCS first moved to dismiss the complaint under Rules 12(b)(1) and (6) on January 21, 2020 and sought an order compelling Maity to arbitrate his claims pursuant to the arbitration clause in his deputation agreement.  (*See* D.E. 4.)  In denying TCS's motion without prejudice on the grounds that the parties had "come forward with facts that put the formation of the arbitration agreement in issue," the Court noted Maity's contentions that TCS gave him only 15 minutes to decide whether to move to the United States, and that he spoke limited English at the time of execution.  (D.E. 19, Op. at 5-6 (quoting *MZM Construction Co., Inc.,* 974 F.3d at 406).)

After engaging in limited discovery under the supervision of Magistrate Judge Waldor, TCS renewed its motion (D.E. 29), arguing that "the circumstances surrounding [Maity's] execution of the [d]eputation [a]greement were not coercive in any way, and that [he] was proficient in his usage of the English language" at the time he signed it.  (D.E. 29-2, Mov. Br.)  Maity opposes, arguing that the arbitration clause in the deputation agreement is both procedurally and substantively unconscionable and thus unenforceable.  (D.E. 30, Opp. Br.)  In

---

[4]  During his deposition, Maity rated his English language skills as a "five or six" out of 10. (Maity Tr. at 71:22-72:2.)

reply, TCS contends that Maity can demonstrate neither procedural nor substantive

unconscionability, and so arbitration must be compelled.  (D.E. 31, Reply Br.)

## IV.    Standard of Review

TCS has moved under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

However, where, as here, the district court has ordered limited discovery concerning the validity

of an arbitration agreement, "Rule 56 furnishes the correct standard for ensuring that arbitration

is awarded only if there is an express, unequivocal agreement to that effect."  *Guidotti v. Legal*

*Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 774-75 (3d Cir. 2013) (internal citations and

quotations omitted).  Accordingly, the standard of review on a motion to dismiss and compel

arbitration is the same as "the standard used by district courts in resolving summary judgment

motions pursuant to Fed. R. Civ. P. 56(c) . . . inasmuch as the district court's order to arbitrate is

in effect a summary disposition of the issue of whether or not there had been a meeting of the

minds on the agreement to arbitrate."  *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d

51, 54 n. 9 (3d Cir. 1980).

Under Rule 56(c), judgment in favor of the movant is appropriate "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."  In this context, summary judgment is not warranted

where "the party opposing arbitration can demonstrate, by means of citations to the record, that

there is a genuine dispute as to the enforceability of the arbitration clause."  *Guidotti*, 716 F.3d at

776 (internal citations and quotations omitted).  If that is the case, the "court may then proceed

summarily to a trial regarding the making of the arbitration agreement or the failure, neglect, or

refusal to perform the same, as Section 4 of the [Federal Arbitration Act] envisions."  *Id.*

## V.     Discussion

### A.  Federal Arbitration Act

The issue of whether Maity's claims should be referred to arbitration is governed by the Federal Arbitration Act (the "FAA") which was enacted "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Pyo v. Wicked Fashions, Inc.*, 2010 WL 1380982, at *4 (D.N.J. Mar. 31, 2010) (Debevoise, J.) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). Accordingly, under the FAA there is a "strong federal policy in favor of the resolution of disputes through arbitration." *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 178 (3d Cir. 2010) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 356, 363 (3d Cir. 2003)). "Where there is a contract between the parties that provides for arbitration . . . '[a]ny doubt concerning the scope of arbitrability should be resolved in favor of arbitration.'" *BP Auto Grp., LLC v. Reynolds & Reynolds Co.*, 2018 WL 6600223, at *2 (D.N.J. Dec. 17, 2018) (Thompson, J.) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

Prior to referring a controversy to arbitration, however, the Court "must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009). Here, Maity does not appear to dispute the second factor—*i.e.*, that his claims fall within the scope of the arbitration clause. Instead, he argues that there was no true "agreement to arbitrate" because the arbitration clause is both procedurally and substantively unconscionable.

### B.  Unconscionability

Under New Jersey law, a finding of unconscionability requires a "two-fold determination" that the contract is both procedurally and substantively unconscionable.  *Vilches v. The Travelers Companies, Inc.*, 413 F. App'x 487, 493 (3d Cir. 2011) (citation omitted); *see Singh v. Uber Techs. Inc.*, 235 F. Supp. 3d 656, 674 (D.N.J. 2017), *vacated and remanded on other grounds,* 939 F.3d 210 (3d Cir. 2019) (a contract "will be enforceable unless there are indicia of both procedural and substantive unconscionability").  Procedural unconscionability "arises out of defects in the process by which the contract was formed," whereas substantive unconscionability "simply suggests the exchange of obligations so one-sided as to shock the court's conscience."  *Pyo*, 2010 WL 1380982, at *4 (internal citations and quotations omitted); *see J Supor & Son Trucking & Riggins Co., Inc. v. Kenworth Truck Co*, 791 F. App'x 308, 314 (3d Cir. 2019) ("To determine whether a contract is unconscionable, we examine both how it was formed (for procedural unconscionability) and its substance (for substantive unconscionability).").  "The party challenging a contract provision as unconscionable generally bears the burden of proving unconscionability."  *Williams v. Washington Mut. Bank*, 2008 WL 5427805, at *2 (D.N.J. Dec. 30, 2008) (Greenaway, J.) (quoting *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999)).

The Court begins with Maity's procedural unconscionability arguments, which are the crux of his opposition brief.  Maity claims that the deputation agreement is a "contract of adhesion" and therefore procedurally unconscionable.  (Opp. Br. at 9.)  But Maity's assertion that procedural unconscionability is "generally satisfied if the agreement constitutes a contract of adhesion" is misguided: it is well settled that "[c]ontracts of adhesion do not necessarily serve as proof of procedural unconscionability."  *Montgomery v. Bristol-Myers Squibb Co.*, 2020 WL

3169373, at *4 (D.N.J. June 15, 2020) (Wolfson, J.).  The term "contract of adhesion" generally refers to an agreement "which is preprepared by the party with excessive bargaining power who presents it to the other party for signature on a take-it-or-leave-it basis."  *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 265 (3d Cir. 2003) (internal citations and quotations omitted). Identifying a contract of adhesion is only "the beginning, not the end, of the inquiry into whether a contract, or any specific term therein should be deemed unenforceable based on policy considerations."  *Pyo*, 2010 WL 1380982, at *5 (quoting *Muhammad v. County Bank of Rehoboth Beach, Del.*, 189 N.J. 1, 15 (2006)).  To that end, the New Jersey Supreme Court requires a fact-sensitive analysis of four factors when a contract of adhesion is involved, namely: "(1) the subject matter of the contract, (2) the parties' relative bargaining positions, (3) the degree of economic compulsion motivating the 'adhering' party, and (4) the public interests affected by the contract."  *Uddin v. Sears, Roebuck & Co.*, 2014 WL 1310292, at *7 (D.N.J. Mar. 31, 2014) (Linares, J.) (quoting *Muhammad*, 189 N.J. at 15).

Assuming arguendo that the deputation agreement is a contract of adhesion, Maity has failed to engage in the requisite analysis of all four procedural unconscionability factors; indeed, any mention of them is noticeably absent from his opposition brief.  *See Montgomery*, 2020 WL 3169373, at *4 ("If a plaintiff cannot adequately show that a contract of adhesion was unfairly signed under these additional factors, he or she fails to prove procedural unconscionability."). His contract of adhesion theory, then, fails.  Maity does offer other arguments for procedural unconscionability built on the following facts surrounding his signing the deputation agreement the day before he left for the United States.

Maity argues that: (i) he had limited knowledge of the English language when he executed the agreement; (ii) he did not have sufficient time to review it; (iii) the arbitration

clause was "buried"; and (iv) TCS "created the impression" that the deputation agreement was a "take it or leave [] it" situation and that "if he did not sign [it] he would lose his job." (*Id.* at 10-18.)

As to Maity's English language proficiency at the time he signed the agreement, a plaintiff's limited knowledge of the English language, standing alone, is insufficient to constitute procedural unconscionability. *See, e.g.*, *Uddin*, 2014 WL 1310292, at *5 (finding that plaintiff agreed to arbitrate despite "limited" knowledge of English language, and recognizing that "[i]n the absence of fraud, the fact that an offeree cannot read, write, speak, or understand the English language is immaterial to whether an English-language agreement the offeree executed is enforceable" (quoting *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 222 (3d Cir. 2008))). Here, significantly, the facts adduced during discovery establish that Maity had a strong foundation in the English language, having studied English in both high school and college. He admits that his college courses were conducted in English and his texts were written in English. When he began working with TCS in September 2007, he certified that he could read, write, and speak in English, and by the time he signed the deputation agreement, he had been working for TCS—and conducting business entirely in English—for more than four years. Accordingly, Maity has not come forward with sufficient evidence of procedural unconscionability on these grounds.

While Maity takes issue with the amount of time he was given to review and sign the deputation agreement, he conceded during his deposition that he learned about his potential deputation beginning in the first week of October 2011—well over one month before his flight on November 30—and worked closely with the FDFU to facilitate the deputation process. He also knew that he would need to sign certain documents as a condition of his deputation, and

never asked to review them in advance.  When he received the deputation agreement on

November 29, he signed it within 15 minutes.  He did not ask for additional time to review the

agreement or ask the FDFU or human resources any questions about it. Absent evidence that

TCS unfairly denied him the opportunity to review the deputation agreement, Maity cannot

prove procedural unconscionability.  *See Montgomery*, 2020 WL 3169373, at \*6 (arbitration

agreement was not procedurally unconscionable where plaintiff "was not unfairly denied an

opportunity to read the contract"); *Reljic v. Tullett Prebon Americas Corp.*, 2011 WL 2491342,

at \*4 (D.N.J. June 21, 2011) (Chesler, J.)  (no procedural unconscionability where plaintiff failed

to present evidence that "she attempted to read the document and was precluded from doing so");

*Pyo*, 2010 WL 1380982, at \*5 (arbitration agreement lacked indicia of procedural

unconscionability where plaintiff claimed that "the human resources representative who

presented him with the Arbitration Agreement was hurried," but presented no evidence that he

"attempted to read that document and was precluded from doing so")*; see also Thomas v. Jenny

Craig, Inc.*, 2010 WL 3076861, at \*5 (D.N.J. Aug. 4, 2010) (Linares, J.) (finding valid

agreement to arbitrate where there was no "evidence that Plaintiff asked for additional time to

review its contents and/or that [Defendant] denied such request").

Moreover, the Court disagrees with Maity's contention that the arbitration clause is

"buried" within the deputation agreement.  Although he correctly points out that the whole

agreement is typed in small font, the arbitration clause is in the same font and it is preceded by a

bolded caption entitled "Dispute Resolution."  *See Smith v. Legal Helpers Debt Resol. LLC*, 2012

WL 2118132, at \*4 (D.N.J. June 11, 2012) (Pisano, J.) (upholding arbitration provisions that

were "set off in their own paragraphs in the agreements with a bolded heading, such that the

provisions were not hidden").  The fact that the arbitration clause does not appear until the sixth

page of the 11-page deputation agreement also does not establish procedural unconscionability.[5] *See, e.g.*, *Romanov v. Microsoft Corp.*, 2021 WL 3486938, at *4 (D.N.J. Aug. 9, 2021) (Wolfson, J.) (upholding arbitration clause that did not appear in introduction of agreement, and citing cases where New Jersey courts have "upheld arbitration clauses where the waiver language appears later in the body of the contract").

Finally, Maity argues that TCS's "take it or leave [] it" approach renders the deputation agreement procedurally unconscionable because it created the "impression" that he would lose his job if he failed to execute the agreement.  (Opp. Br. at 11.)  But in order to establish unconscionability, a plaintiff must come forward with a "special degree of economic compulsion motivating [him] to sign" the agreement.  *Aull v. McKeon-Grano Assocs., Inc.*, 2007 WL 655484, at *7 (D.N.J. Feb. 26, 2007) (Ackerman, J.) (internal citations and quotations omitted).  That the plaintiff might have "lost [his] opportunity to work for Defendant by rejecting the Arbitration Agreement" does not, without more, support a finding of procedural unconscionability.  *See Montgomery*, 2020 WL 3169373, at *6.  Here, the record only shows that if Maity had not signed the deputation agreement, he would not be working for TCS in the United States.  There is no evidence that Maity would have lost his job in India or that any TCS employee threatened him with joblessness if he failed to sign.  Furthermore, Maity's deposition

---

[5] The Court notes that TCS has failed to respond to an argument raised in Maity's opposition brief—to wit, the application of *Atalese v. U.S. Legal Servs Grp, L.P.*, 219 N.J. 430 (2014) to this case. (*See* Opp. Br. at 13-15.)  *Atalese*, which stands for the proposition that an arbitration clause "must explain that the plaintiff is giving up [his] right to bring [his] claims in court or have a jury resolve the dispute," has been adopted by the Third Circuit.  *Id.* at 447; *see Moon v. Breathless Inc*, 868 F.3d 209, 214 (3d Cir. 2017).  The application of *Atalese* to this case is tenuous at best in light of the fact that Maity was released from his deputation in 2013, before *Atalese* was decided.  In his brief Maity fails to acknowledge this or provide any authority that would suggest retroactivity.

testimony indicates his focus was the impact on TCS should he not follow through with the booked travel arrangements—not his employment or his finances.  (*See* Maity Tr. at 83:3-9 ("In my opinion, in my understanding, yes, I did the thing, because the foreign travel was already booked.  The only thing was to sign the document.  *If I hadn't signed the document, then it would be a loss for the company and whatever else*.") (emphasis added).)   Accordingly, no "special degree" of economic compulsion motivated Maity to execute the deputation agreement, and the Court declines to find it procedurally unconscionable on those grounds.

## VI.   Conclusion

In light of the foregoing, Maity has failed to prove procedural unconscionability, which is both the gravamen of his opposition to the motion to compel arbitration and a necessary showing in order to prevail on the contractual defense of unconscionability.  *See Vilches*, 413 F. App'x at 493.  The Court need not reach the parties' arguments regarding the alleged substantive unconscionability of the deputation agreement, and grants TCS's motion.

An appropriate order will issue.


                                                          /s/ Katharine S. Hayden
Date: December 29, 2021                                   Katharine S. Hayden, U.S.D.J.

14